IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

ALVIN HAYNES and )
CLAYTON JAMES, )
                                 )
    Plaintiffs, )
                                 )   Case No: 7:16cv00339
v. )
                                 )
ASPLUNDH TREE EXPERT CO., )
                                 )
Serve: )
CT Corporation System )
4701 Cox Rd., Suite 285 )
Glen Allen, VA 23060 )
                                 )
    Defendant. )

## COMPLAINT

The above-named Plaintiffs, Alvin Haynes and Clayton James, by counsel, state as their Complaint against Defendant Asplundh Tree Expert Co., (hereinafter, "Asplundh"), the following:

### I. JURISDICTION

1. This is a suit for discrimination and a hostile work environment authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.* ("Title VII") and discrimination pursuant to the Civil Rights Act of 1991, as amended, as codified under 42 U.S.C. § 1981, *et seq.* ("Section 1981").

2. This Court has jurisdiction pursuant to 42 U.S.C. §2000e-5(f) and 28 U.S.C. §1343(a)(4).

3. This is also a suit for retaliation pursuant to Va. Code § 40.1-51.2:1.

4. This Court has supplemental jurisdiction pursuant to 28 U.S. Code § 1367, as the acts and/or omissions giving rise to the violations of Va. Code § 40.1-51.2:1, arose from the same basis of operative fact and same controversies under the law.

5. Venue is appropriate in this court as the alleged unlawful employment practices on the part of Defendant occurred within the Western District of Virginia. *See* 42 U.S.C. §2000e-5(f)(3).

6. The Plaintiffs timely filed their charge with the Equal Employment Opportunity Commission ("EEOC"). The Plaintiffs each received an EEOC Notice of Right to Sue dated April 20, 2016. Both are attached to this Complaint, collectively, as **Exhibit A**. The Plaintiffs initiate this action within ninety ("90") days of receipt of the Notice of Right to Sue.

## II. THE PARTIES

7. Plaintiff Alvin Haynes is a fifty-three year-old African-American male who resides in Roanoke, Virginia. He began working for Asplundh on or about September 22, 2010 as a Groundsman. After a promotion and during the pertinent time of the particulars of this Complaint, Plaintiff Haynes worked as a Foreman for Asplundh.

8. Plaintiff Clayton James is a fifty-three year-old African-American male who resides in the District of Columbia. He began working for Asplundh on or about September 17, 2014 as a Flag Man. During the pertinent time of the particulars of this Complaint, Plaintiff James worked as a Trimmer for Asplundh.

9. Asplundh is an international company with over 30,000 employees,

2

headquartered in Willow Grove, Pennsylvania and doing business in the Western District of Virginia and elsewhere.

10. At all times relevant to the Complaint, Asplundh acted through its agents, servants and/or employees.

### III. FACTUAL BACKGROUND

11. The Plaintiffs initially worked out of the Asplundh office located at 2810 Roanoke Avenue Southwest, Roanoke, VA 24015.

12. During the pertinent time of their employment, the Plaintiffs worked under the direct supervision of General Foreman Anthony Garst, a Caucasian male.

13. Mr. Garst worked under the direction of Supervisor Mike Meador, a Caucasian male.

14. During the typical workday, the Plaintiffs frequently worked alongside each other. Plaintiff James worked beneath Plaintiff Haynes in the chain of command as Plaintiff Haynes was his immediate supervisor.

15. Plaintiffs experienced discriminatory and hostile conduct during the course of their employment with Asplundh.

16. On or about December 18, 2014, during the course of the working day at Asplundh in Roanoke, Mr. Garst instructed Plaintiff James to pick up a length of dirty rope that was lying on the ground.

17. Mr. Garst did this in front of other members of the crew and Plaintiff Haynes. Plaintiff James complied with the request.

18. Mr. Garst subsequently instructed Plaintiff James to place the dirty end of the

3

rope in Plaintiff James' mouth. Plaintiff James refused. Mr. Garst and other Caucasian employees laughed at Plaintiff James.

19. On or around December 19, 2014, Plaintiff James and Plaintiff Haynes were working at a job site located on Riverside Road in Roanoke, Virginia. Mr. Garst arrived at the job site in his company vehicle. After parking adjacent to the site, Mr. Garst waved at the workers to approach his truck.

20. Plaintiff James stood near the driver side door when Mr. Garst stated to him, "Hey, Clayton [James], tell Alvin [Haynes] the next time he gets smart with me I got something for him."

21. Plaintiff James immediately told Plaintiff Haynes what Mr. Garst had told him. Plaintiff Haynes and Plaintiff James then returned to Mr. Garst's vehicle. Plaintiff Haynes asked Mr. Garst what he meant when he had advised Plaintiff James that he "had something" for Plaintiff Haynes.

22. Mr. Garst immediately reached into the back seat of his vehicle and withdrew an assault rifle. Mr. Garst gestured with the rifle as if to imply that he would use the firearm against either Plaintiff Haynes, Plaintiff James, or both of them.

23. Both Plaintiff Haynes and Plaintiff James were shocked and immediately concerned for their safety at Asplundh. Plaintiff Haynes and Plaintiff James were the only African Americans then working on the crew.

24. Looking at the firearm from their perspective, it appeared as if the barrel of the firearm was pointed at both of them.

25. As soon as Plaintiff Haynes noticed that the barrel of the gun was dangerously

close so he reached out with his arm and touched the barrel of Mr. Garst's gun in an attempt to move it away.

26. Caucasian employees standing nearby laughed as Plaintiff Haynes touched the gun barrel.

27. Keeping his movements slow, Plaintiff Haynes then moved the barrel away from his general direction so he would be at less risk of sustaining a gunshot wound.

28. Justification for Mr. Garst's actions did not exist.

29. Observationally, the firearm brandished by Mr. Garst appeared to be an AR-15 semiautomatic assault rifle.

30. Before this incident, the Plaintiffs knew of no other motive for Mr. Garst's actions, other than a discriminatory animus possessed by Mr. Garst.

31. Serious violations of Asplundh policy should have been established against Mr. Garst and perhaps others for the incident. Mr. Garst, who currently remains employed at Asplundh, was in serious violation of Asplundh's alleged policies. Attached to this Complaint and made a part hereof as **EXHIBIT B**, is the Asplundh Employee Handbook in effect at the time of these incidents.

32. Moreover, the Handbook contains a Workplace Violence Policy which states in pertinent part:

> Asplundh Tree Expert Co.'s object is to provide a work environment which is free from violence or threats of violence against individuals, groups or employees.
>
> . . .
>
> This policy requires that all individuals on Company

5

premises or while representing Asplundh Tree Expert Co., conduct themselves in a professional manner consistent with good business practices and in absolute conformity with non-violence principles and standards. Additionally, employees must be alert to, and immediately inform appropriate Company management staff of any behavior(s) or potential behavior(s) which violate or could constitute a violation of this policy. Asplundh Tree Expert Co., strictly prohibits the use of violence or threats of violence in the workplace and views such actions very seriously. Company policy applies the same standards to non-employees. Asplundh Tree Expert Co. will immediately investigate all incidents of violence, potential violence or threats of violence of which it becomes aware and will take appropriate action to resolve these situations.

33. As it regards the treatment of the Plaintiffs in this action, at no time did Asplundh follow this policy.

34. The policies of Asplundh as codified in their administrative materials and handbooks were not followed.

35. The incident with Mr. Garst ended when Mr. James and Mr. Haynes retreated.

36. Endangered at the workplace, Plaintiff James and Plaintiff Haynes proceeded to make a series of verbal and written complaints to upper management in Asplundh regarding these circumstances.

37. Responding to these complaints, Mr. James and Mr. Haynes were informed that an investigation would ensue.

38. Upon information and belief, Asplundh was aware of Mr. Garst's conduct via the complaints made by the Plaintiffs. Upon information and belief, these complaints were ignored and no investigation occurred nor was Mr. Garst ever meaningfully

6

disciplined for his actions.

39. The Handbook also contains a Discipline and Discharge policy which states in pertinent part:

> Discharge offenses include but are not limited to: excessive absenteeism, drinking intoxicants or using drugs just before or during work, the possession, distribution, purchase or sales of drugs during the working day, fighting, **bringing firearms or other weapons on the job**, falsifying records, gambling during working hours, **violation of safety rules resulting in immediate danger to** yourself or **your fellow employees**, repeated violation of the safety or work rules, and insubordination.

40. This Discipline and Discharge policy was followed by neither Mr. Garst nor Asplundh.

41. Rather, responding in retaliation to the aforementioned complaints, Asplundh immediately engaged in an unlawful conspiracy to terminate both Plaintiff Haynes and Plaintiff James.

42. Plaintiff Haynes and Plaintiff James were told by members of Asplundh management that Mr. Garst was "written up for horseplay," but upon information and belief, no meaningful discipline was ever levied upon Mr. Garst for bringing a firearm to the work site and threatening to use the firearm against his subordinate employees.

43. Asplundh also immediately retaliated against Plaintiff James by lowering his hourly wage in the next pay period.

44. Eventually, in early January, 2015, Plaintiff Haynes and Plaintiff James were transferred to another Asplundh location. However, shortly after arriving, Asplundh

7

Supervisor Mike Meador confronted Plaintiff Haynes and Plaintiff James.

45. Mr. Meador informed his two subordinate employees that they had received an anonymous letter indicating that both Plaintiff Haynes and Plaintiff James smoked marijuana at the work site and that the anonymous person felt unsafe around them.

46. This was a patent lie as neither Plaintiff James nor Plaintiff Haynes had smoked marijuana at the work site.

47. Plaintiff James and Plaintiff Haynes had previously also complained of repeated drug use by other employees at Asplundh work sites. Many of the Asplundh workers smoke marijuana and/or used other illegal drugs during their job shifts. These acts were known and condoned by Asplundh management.

48. Plaintiff James and Plaintiff Haynes were instructed to take mandatory drug tests on January 7, 2015. Both men failed, testing positive for marijuana.

49. However, both men consistently deny ever having imbibed on the job.

50. Upon information and belief, no Caucasian employees were required to take mandatory drug tests even though similar complaints had been made about drug use by certain Caucasian employees during their job shifts.

51. Plaintiff James and Plaintiff Haynes were then suspended from work without pay. On January 14, 2015, Asplundh employee Robert Stack informed Plaintiff Haynes and Plaintiff James that if they wanted their jobs back, they would have to pay for a substance abuse treatment program that neither man could afford.

52. On January 15, 2015, Plaintiff James telephoned Mr. Stack and asked if he [Plaintiff James] still worked for Asplundh. Mr. Stack informed Plaintiff James that

8

he [Plaintiff James] did not work for Asplundh any longer.

53. As a direct and proximate result of the actions of Asplundh the Plaintiffs have suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

### COUNT I: TITLE VII HOSTILE WORK ENVIRONMENT

54. The Plaintiffs incorporate by reference herein the preceding paragraphs of this Complaint.

55. At all times material hereto, Asplundh had an obligation to maintain a work environment that was not charged with racial discrimination and hostile to the Plaintiffs and other individuals of African-American descent.

56. Asplundh violated federal law by creating and permitting a work environment to exist that was discriminatory and hostile and offensive to the Plaintiffs and others, and by wrongfully harassing, disparaging, threatening, intimidating and ultimately terminating their employment because of their race.

57. The conduct previously detailed was unwelcome and unlawful.

58. The conduct was based on the race of the Plaintiffs and others as evinced by the disparate treatment the Plaintiffs and, upon information and belief, other African-American Asplundh employees received.

59. The conduct was sufficiently severe and pervasive so as to alter the conditions of the Plaintiffs' employment and to create an abusive atmosphere as the conduct occurred frequently. Indeed, the Plaintiffs were ultimately unlawfully terminated from

employment due to racially discriminatory and hostile conduct.

60. Mr. Garst and Mr. Stack were acting in the course and scope of their employment with Asplundh at the time of the incidents described above therefore, Asplundh is liable for their actions under the doctrine of *respondeat superior*. The actions taken against the Plaintiffs were committed during working hours and at their place of employment and/or were in conjunction with work-related responsibilities.

61. As a direct and proximate result of Asplundh's actions, the Plaintiffs have suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

62. At all times material hereto, Asplundh engaged in a practice or practices supporting a hostile work environment with malice or reckless indifference to the federally protected rights of the Plaintiffs so as to support an award of liquidated and/or punitive damages.

63. The above-described acts by Asplundh constitute the creation of a hostile work environment in violation of the Civil Rights Act of 1991, as amended, 42 U.S.C. § 1981, *et seq*.

### COUNT II: TITLE VII DISCRIMINATION

64. The Plaintiffs incorporate by reference herein the preceding paragraphs of this Complaint.

65. At all times material hereto, Asplundh had an obligation to maintain a work

10

environment that was not charged with racial discrimination and hostile to the Plaintiffs and other individuals of African-American descent. Moreover, at all times material hereto, Asplundh had an obligation not to treat employees in a disparate manner due to race.

66. Asplundh violated federal law by not performing proper investigations or discipline/termination, pursuant to its own policies, as it related to the aforementioned allegations raised by the Plaintiffs.

67. The conduct previously detailed was unwelcome and unlawful.

68. The conduct was based on the race of the Plaintiffs and others as evinced by the disparate treatment the Plaintiffs and, upon information and belief, other African-American Asplundh employees received.

69. Mr. Garst and Mr. Stack were acting in the course and scope of their employment with Asplundh at the time of the incidents described above therefore, Asplundh is liable for their actions under the doctrine of *respondeat superior*. The actions taken against the Plaintiffs were committed during working hours and at their place of employment and/or were in conjunction with work-related responsibilities.

70. As a direct and proximate result of Asplundh's actions, the Plaintiffs have suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

71. At all times material hereto, Asplundh engaged in a discriminatory practice or

practices with malice or reckless indifference to the federally protected rights of the Plaintiffs so as to support an award of liquidated and/or punitive damages.

72. The above-described acts by Asplundh constitute racial discrimination in violation of the Civil Rights Act of 1991, as amended, 42 U.S.C. § 1981, *et seq.*

### COUNT III: CLAIM FOR 1981 RACE DISCRIMINATION

73. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

74. At all times material hereto, Asplundh had an obligation to maintain a work environment that was not charged with racial discrimination and hostile to the Plaintiffs and other African-American employees.

75. Asplundh violated federal law by creating and permitting a work environment to exist that was discriminatory and hostile to the Plaintiffs and other African-American employees, and by wrongfully terminating the Plaintiffs.

76. The Plaintiffs' supervisors and others were acting in the course and scope of their employment with Asplundh at the time of their actions, therefore, Asplundh is liable for their actions under the doctrine of *respondeat superior*. Their actions against the Plaintiffs were committed during working hours and at their place of employment and/or were in conjunction with work-related responsibilities.

77. As a direct and proximate result of Asplundh's actions, the Plaintiffs have suffered and will continue to suffer pecuniary loss, emotional pain, suffering,

inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

78. At all times material hereto, Asplundh engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of the Plaintiffs so as to support an award of liquidated and/or punitive damages.

79. Prior to the Plaintiffs' termination, the Plaintiffs were performing their work at a satisfactory level and meeting or exceeding Asplundh's legitimate business expectations.

80. Any reasons cited by Asplundh for the Plaintiffs' discipline and termination from employment were pretextual as the Plaintiffs' work performance was meeting legitimate business expectations.

81. The above-described acts by Asplundh constitute racial discrimination in violation of the Civil Rights Act of 1991, as amended, 42 U.S.C. § 1981, *et seq.*

### COUNT IV: VIOLATION OF VIRGINIA CODE SEC. 40.1-21.2:1: RETALIATION

82. The Plaintiffs incorporate by reference herein the preceding paragraphs of this Complaint.

83. Based upon the acts and/or omissions of Asplundh, the Plaintiffs suffered retaliatory acts which included, but were not limited to, harassment, false accusations, unnecessary drug testing, disparate treatment and termination from employment. All of these acts are in violation of Va. Code § 40.1-51.2:1.

84. The Plaintiffs were wrongfully terminated from the Defendant on or about

13

January 7, 2015, predicated upon their complaints of workplace safety and co-worker drug use in violation of Va. Code § 40.1-51.2:1.

85. Pursuant to Va. Code § 40.1-51.2:2, the Plaintiffs have exhausted all administrative remedies.

86. Upon information and belief, the Defendant enacted an illegal retaliatory plan to remove the Plaintiffs from their place of employment due to their participation in statutorily protected activities.

WHEREFORE, Plaintiffs Alvin Haynes and Clayton James pray for judgment against Defendant Asplundh Tree Expert Co., and for equitable relief, compensatory, liquidated and/or punitive damages, together with prejudgment interest, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.*, and the sum total of five hundred thousand dollars ($500,000.00) for each Plaintiff as damages due to the violations of Virginia Code § 40.1-51.2:1.

TRIAL BY JURY IS DEMANDED

Respectfully submitted,

ALVIN HAYNES & CLAYTON JAMES

_____
Thomas E. Strelka, Esq. (VSB# 75488)
L. Leigh R. Strelka, Esq. (VSB # 73355)
STRELKA LAW OFFICE, PC
Warehouse Row
119 Norfolk Avenue, S.W., Suite 330
Roanoke, VA 24011
Tel: 540-283-0802
thomas@strelkalaw.com
leigh@strelklaw.com

*Counsel for Plaintiffs*

15